J-S20015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM THOMA ROMBERGER | : | |
| | : | |
| Appellant | : | No. 79 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 4, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004558-2018

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                     **FILED AUGUST 17, 2021**

Appellant William Thoma Romberger appeals *nunc pro tunc* from the judgment of sentence following his convictions for rape of an unconscious person and indecent assault of an unconscious person.[1] On appeal, Appellant challenges the denial of his motion to allow evidence of the victim's sexual conduct pursuant to the Rape Shield Law[2] without a hearing. We affirm.

The trial court summarized the facts of this case as follows:

In the morning hours of July 25, 2018, [the victim] awoke to Appellant touching her and having his penis inside of her.[fn2] The victim yelled at the Appellant to leave, the Appellant said "sorry" and left. The victim identified the Appellant in court and testified that she did not engage in consensual sex.

[fn2] As a way of background, the victim recently moved to the Elizabethtown, PA area and connected with family. She

---

[1] 18 Pa.C.S. §§ 3121(a)(3), and 3126(a)(4), respectively.

[2] 18 Pa.C.S. § 3104.

had a cousin who lived across the street who introduced her to Appellant (who also was the victim's cousin). The Appellant would help the victim watch her children. On the night in question, the Appellant asked if he could stay at the victim's house. The victim left the front door open.

The Commonwealth also introduced the testimony of Pennsylvania State Trooper Timothy Krauth. Trooper Krauth was the first officer to arrive on the scene and make contact with the victim. Trooper Krauth testified that the victim's eyes were welled up, she had tears in her eyes, and appeared defeated and scared. Faith Mong, a SANE (sexual assault nurse examiner) also testified. Ms. Mong examined the victim on July 25, 2018, and through Ms. Mong, the Commonwealth introduced a Pennsylvania State Police serology report and a DNA report. Ms. Mong testified that the Appellant's DNA was present inside the victim's internal genitalia.

Trial Ct. Op., 2/22/21, at 2-3 (some formatting altered and record citations omitted).

The Commonwealth filed the instant charges against Appellant on December 3, 2018. Information, 12/3/18, at 1. On December 5, 2019, a jury found Appellant guilty of both charges, and on March 4, 2020, the trial court sentenced Appellant to a term of five to ten years of incarceration on the rape conviction and a concurrent term of one to two years of incarceration for indecent assault. Appellant did not file a direct appeal.

On October 19, 2020, Appellant filed a *pro se* "petition to waive all or a portion of transcript costs" in which he alleged that trial counsel was ineffective for failing to file a direct appeal. The trial court properly treated Appellant's *pro se* filing as a Post Conviction Relief Act[3] (PCRA) petition and

---

[3] 42 Pa.C.S. §§ 9541-9546.

appointed PCRA counsel.[4]  On December 14, 2020, PCRA counsel filed a PCRA petition requesting the reinstatement of Appellant's direct appeal rights *nunc pro tunc*.

On December 15, 2020, the Commonwealth filed a response stating that it did not oppose the reinstatement of Appellant's direct appeal rights, and on December 18, 2020, the trial court reinstated Appellant's direct appellate rights *nunc pro tunc*.  Appellant filed a timely notice of appeal on January 14, 2021, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. Whether the trial court erred in failing to allow evidence of a third [party's] DNA within the alleged victim where the alleged victim indicated she did not have sex with anyone other than the alleged assault by [Appellant]?

2. Whether the trial court erred in not ordering an *in camera* hearing where the motion and offer of proof were sufficient on their faces to warrant an evidentiary hearing?

Appellant's Brief at 6.

As Appellant's issues are interrelated, we address them concurrently. Appellant contends that the trial court abused its discretion in precluding certain forensic evidence.  Appellant states that the victim gave a statement to the police in which she said that she did not have sexual intercourse in the two weeks prior to the assault.  Appellant's Brief at 11 (citing N.T. Trial,

---

[4] ***See Commonwealth v. Johnson***, 803 A.2d 1291, 1293 (Pa. Super. 2002) (stating that "the PCRA provides the sole means for obtaining collateral review, and that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition") (citation omitted)).

12/4/19, at 7-8). Appellant argues that the forensic evidence recovered from the victims' genitals revealed DNA from Appellant and the victim, and it also noted the presence of a third party's DNA. *Id.* at 11. Appellant contends that evidence of a third person indicates either that the DNA test was inaccurate or that the victim's statement wherein she said that she had not engaged in sexual intercourse for two weeks was false and casts doubt on her truthfulness. *Id.* at 11-12. Appellant asserts that the DNA may directly exculpate Appellant, and he claims that the trial court abused its discretion in failing to hold an *in camera* hearing regarding the admissibility of the finding of a third party's DNA. *Id.* at 13-14.

The Commonwealth states that the vaginal swab of the victim's genitals revealed a mixture of DNA from two individuals: Appellant and the victim. Commonwealth's Brief at 6. However, there was also evidence of "minor/less intense alleles," or genetic information present. *Id.* The Commonwealth argues that the "minor/less intense alleles" were of an insufficient quantity for any further analysis, and there is no way to know the origin of those alleles, as they could have been from prior intercourse or could have been present on Appellant's genitalia when he penetrated the victim. *Id.* Moreover, the Commonwealth notes that evidence of a third person does not make it more or less likely that Appellant raped the victim, and evidence of prior consensual sexual intercourse is inadmissible under the Rape Shield Law. *Id.* at 6-7.

Our standard of review is as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted). This Court has stated that "abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Aikens*, 990 A.2d 1181, 1184-85 (Pa. Super. 2010) (citation omitted).

This Court has explained:

> Relevance is the threshold for admissibility of evidence; evidence that is not relevant is not admissible. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008); Pa.R.E. 402. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Our Rules of Evidence provide the test for relevance: evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Further, "the court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

> Under Rule 607, "the credibility of a witness may be impeached by any evidence relevant to that issue." Pa.R.E. 607(b). The Comment to Rule 607 further emphasizes that any evidence

offered to impeach the credibility of a witness must be relevant under the Rule 401 relevancy test. In addition, Rule 608 provides that "a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Pa.R.E. 608(a). However, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness's conduct." Pa.R.E. 608(b)(1).

*Commonwealth v. Leap*, 222 A.3d 386, 390-91 (Pa. Super. 2019) (some citations omitted and formatting altered), *appeal denied*, 233 A.3d 677 (Pa. 2020).

Pennsylvania's Rape Shield Law provides, in relevant part, as follows:

**(a) General rule.—**Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104(a)-(b).

The purpose and application of the Rape Shield Law has been summarized as follows:

> [I]t is intended to prevent a trial from shifting its focus from the culpability of the accused towards the virtue and chastity of the victim. This protective measure is salient where defendants attempt to utilize evidence of the complainant's alleged promiscuity to bolster their claim of consent. Thus, the shield law prevents a sexual assault trial from degenerating into an attack upon the victim's reputation for chastity. It additionally removes obstacles to the reporting of sex crimes.

> With that said, the shield law may not be applied in a manner that violates a defendant's constitutional right to a fair trial, including his right to present evidence and cross-examine witnesses. In this regard, the Sixth Amendment and Article I, Section 9 of the state Charter both protect a defendant's right to be confronted with adverse witnesses. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.["]); PA. CONST. art. I, § 9 (same). The federal right to be confronted with such witnesses has been incorporated to the States and includes the right to conduct reasonable cross-examination. This is true of the state provision as well.

> At the same time, the confrontation right is not absolute. It guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Thus, trial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

> . . . Rape Shield laws, if rigidly construed, could impermissibly encroach upon a defendant's right to confront and cross-examine witnesses which is secured under the United States and Pennsylvania Constitutions. As a consequence, Pennsylvania courts have sought to balance the defendant's fundamental right to a fair trial, including his right to confront his accuser, against the state's interests embodied in the statute (as outlined above) and in the rules of evidence. Thus, courts have found the law

- 7 -

unconstitutional as applied in circumstances where the defendant seeks to introduce evidence for reasons unrelated to impugning the complainant's character, and the probative value of that evidence outweighs the danger of unfair prejudice.

*Commonwealth v. Rogers*, 250 A.3d 1209, 1215-17 (Pa. 2021) (footnotes and some citations omitted; some formatting altered).

Here, the trial court addressed Appellant's claims as follows:

[T]here was no evidence presented that the victim had a desire to engage in sexual conduct with the Appellant, the victim's cousin. The Appellant attempts to question the victim on third-party DNA found inside her genitalia to discredit the victim and "shift the focus from the culpability of the accused toward the virtue and chastity of the victim." The Rape Shield Law was specifically designed to exclude irrelevant and abusive inquiries regarding prior sexual conduct. Additionally, despite trial counsel's contention that the third-party DNA was a male, the Commonwealth quickly corrected and indicated that we do not know whether it was female or male DNA. N.T. Trial, 12/4/19, at 10. Also, the Commonwealth indicated that the amount was such a minor amount. This evidence also does not exonerate the Appellant because his DNA was also found inside the victim's genitalia. This proposed evidence (third-party DNA) is not relevant to show the victim's bias or motive. While [Appellant] attempts to discredit the victim's testimony by claiming that the victim lied about not having any sexual intercourse two weeks prior to the incident, the minute amount of DNA found[fn4] does not assist in refuting the argument that the victim did not consent to the sexual activity at issue.

> [fn4] The Commonwealth also argued that the DNA could have been on the Appellant's penis when he penetrated her and then left behind when he ejaculated. N.T. Trial, 12/4/19, at 10.

With regards to [whether the probative value of the evidence outweighs its prejudicial effect], the prejudicial impact of the proposed evidence would far outweigh any probative value as it serves no purpose other than to shift the fact finder's focus "from the culpability of the accused toward the virtue and chastity of the victim." *Commonwealth v. Burns*, 988 A.2d 648, 689 (Pa.

Super. 2009). Simply put, this evidence does not have probative value that is exculpatory to the defendant and would merely inflame the minds of the factfinders. We note that if there was any "probative value at all to the proffered evidence, it is greatly outweighed by the prejudice and underlying policy considerations of the rape shield statute." ***Commonwealth v. Largaespada***, 184 A.3d 1002 (Pa. Super. 2018).

Finally, with regards to [whether there were alternative means of proving bias or motive to challenge credibility], trial counsel had ample opportunity to cross-examine the victim concerning inconsistencies and contradictions as to her memory about the morning of the alleged incident. ***See generally*** N.T. Trial, 12/4/19, at 119-131. . . .

As such, Appellant has failed to establish how the third-party DNA was admissible under the Rape Shield Statute. Accordingly, a hearing was not required as the evidence was insufficient on its face. Additionally, the evidence was not relevant and thus not admissible.

Trial Court Op., 2/22/21, at 5-6 (some formatting altered).

Following our review of the record, we agree with the trial court's conclusion. Although the forensic evidence revealed a third insignificant contributor of DNA, there is no evidence that this DNA was seminal fluid or that it was deposited through sexual contact. Further, there is no indication that these minor alleles establish another instance of sexual intercourse or in any way diminish the credibility of the victim or the truthfulness of her statement to police. As the trial court noted, the minor alleles could not be determined to be male or female, and there was no indication of the source. N.T. Trial, 12/4/19, at 10. We agree with the trial court that this evidence shows merely that in addition to measurable quantities of DNA belonging to Appellant and the victim, a third party's DNA was minutely present. ***See id.***

- 9 -

at 8-10 (noting that the recovered DNA matched Appellant, the victim, and an unknown third contributor); *see* DNA Analysis, 2/11/19, at 2 (providing that in addition to identifying DNA from Appellant and the victim, "additional minor/less intense allele(s) were also present. No further Interpretation could be made due to an insufficient quantity of DNA from this minor component").

For the reasons set forth above, we agree with trial court that the indication of a third party's DNA does not provide a basis for concluding that the victim was not credible. Therefore, the evidence would have been more prejudicial that probative. *See Leap*, 222 A.3d at 390-91. As such, Appellant has not established an exception to the Rape Shield Law, and we conclude that there was no abuse of discretion in the trial court precluding this evidence without a hearing.[5] *See id.*; *see also* 18 Pa.C.S. § 3104. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021

---

[5] Because we conclude that the evidence in question, which did not exculpate Appellant, was related to impugning the victims' character and that the probative value of the evidence was clearly outweighed by the danger of unfair prejudice, the circumstances in which the Rape Shield Law has been held to be unconstitutional as applied are not present. *See Rogers*, 250 A.3d at 1217.